## W. S. WINDBORN v. LEWIS GUINN.

Eastern Section.    March 2, 1928.

Shelton & Harbert, of Savannah, for appellant.
Ross & Ballew, of Savannah, for appellee.

SENTER, J.  The controversy in this case arose over the owner-ship and right of possession to a narrow strip of land containing about two and one-eighths acres.  The original bill was filed in 1915.  A demurrer was filed to the bill shortly after the bill was filed and was overruled by the Chancellor, but with leave to rely upon the grounds thereof in the answer.  The case was partly prepared for trial in 1915, but the preparation of the case for trial was not con-cluded until 1927, when the case was heard by the Chancellor, and the issues determined in favor of the defendant, and the bill dis-missed at the cost of complainant.  From this decree the complainant has appealed to this court.

The original bill alleges in substance, that complainant is the owner of a certain tract of land described in the bill by metes and bounds, and the deed of complainant to the tract of land in ques-tion is filed as an exhibit to the original bill.  The land in dispute is located south of a line purporting to be the line established and agreed upon between the owners of the respective tracts, and as being the north boundary line of complainant's tract and the south boundary line of defendant's tract.  The bill alleges that many years ago a former owner of the tract now owned by defendant agreed with the complainant on a line dividing the two tracts, and pursuant to the agreed location the former owner of defendants tract, Edgar Cherry, had a wire fence built as the dividing fence.  The com-plainant further alleges that he had been in possession of the strip of land now involved under this enclosure for more than twenty years.  The bill further alleges that the defendant, in the year 1914, entered upon the premises and erected a new fence placing the same south of the old fence so as to include this strip of land within the enclosure of the defendant's tract, and seeks to have the right of title and the right of possession of said strip decreed to com-plainant, and also sues for the value of timber alleged to have been cut and removed from the strip by the defendant.

The deed filed by complainant as an exhibit to the bill calls for a straight line east and west on the north end of complainant's tract, while the description in the bill describes this line from a certain point referred to in the record as a large gum tree marked as a side line tree which stands on the east bank of Julius branch.  This description contained in the original bill varies materially from the description of this line as contained in the deed which com-plainant filed as exhibit to his bill.  It is evident from the record that the description of this line as contained in the bill was obtained

from a survey which complainant had made shortly before the filing of the bill, and in which survey the bushes and trees to which an old wire fence had been attached were followed by the surveyor by the direction of the complainant.

In 1914 the defendant suggested to complainant that they have this dividing line surveyed and definitely located, explaining that he was desirous of building a permanent fence enclosing his lands and wanted the permanent fence to be properly located. There was no objection to this by complainant, and defendant procured the services of Mr. Harbert, a land surveyor, to run out and locate the dividing line between the two tracts. Mr. Harbert made the survey, and in doing so ran a straight line west from the large gum tree standing near the bank of Julius branch. All parties agree that this gum tree was a sideline tree and so marked, and there is no dispute as to the line from a point beginning at the gum tree running east. It is now agreed by all parties that the only portion of the line in dispute is from this gum tree west to the bank of Tennessee river. After Mr. Harbert ran the line for the defendant, the complainant was not satisfied and suggested to the defendant that they procure the county surveyor to run the line, and it appears that the complainant at the time this suggestion was made expressed a willingness to abide by the line as located by the county surveyor. The defendant agreed to this, and they procured the then county surveyor to run the line and he located it in the same place that Harbert had located it. Defendant proceeded to erect a substantial permanent fence on the line as located by the two surveyors. The complainant then procured the same county surveyor to go on the premises and run a line following the line of trees and saplings to which the old wire fence had been attached. The county surveyor, in running out the line of the old wire fence, simply followed the trees and saplings to which the old fence had been attached, and was not seeking to locate the true line separating the two tracts. Complainant, in the brief filed, practically concedes and admits that the line as located by the two surveyors, and on which the defendant erected his fence, is the correct line. But is now contended that because of a parol agreement between Mr. Cherry, a former owner of defendant's tract, and himself, as to the location of the dividing line, that this agreement acted upon by both parties in good faith in the absence of knowledge upon the part of the then owners of where the true line ran, that this agreed line is binding upon the parties and their successors in ownership. Many cases are cited in support of this contention. It is well settled that where a boundary line is in dispute, and the respective owners are uncertain as to the true location of the line, and desiring to settle the dispute, may agree on a line, and when under such circumstances they do agree

on a permanent location of the line dividing their respective tracts, that such line so agreed upon, and acquiesced in by the parties to the agreement, does not come within the statute for the prevention of frauds and perjuries, and is binding upon the parties and their respective successors in ownership. (4 R. C. L., sec. 66-67.)

In Vol. 4, A. & E. Ency. of Law, page 860, the rule is thus stated:

"Where the boundary line between two estates is indefinite or unascertained, the owners may, by parol agreement, establish a division line, and the line thus defined will afterwards control their deeds, notwithstanding the statute of frauds."

This rule has been recognized by the Supreme Court of this State and by this court. In Rogers v. Taylor, 2 Tenn. App., 445, it is stated:

"It is well established that parties owning adjoining lands may by agreement establish a boundary line between their lands, where there is no certain and established line known to them."

In the same case it is further stated:

"A parol agreement fixing the boundary line between adjoining owners is not within the statute of frauds if correct line is unknown. . . .

"When parties agree upon a common line and then both make deeds to other parties recognizing the line, they are estopped to dispute the line as between themselves."

We do not think that the rule as above announced can be made applicable to the facts of the present case. We find no agreement on the part of the respective parties, or their predecessors in ownership, that can properly be construed as an agreement between the parties to fix a definite and permanent line between the respective tracts. It appears that Mr. Cherry, a former owner of defendant's tract, desired to erect a temporary fence along or near, or about, his south bounday line so that he could pasture that part of his land, and informed complainant that he was going to have such a fence erected. The parties did not go together on the ground and agree on a division line, but Mr. Cherry sent hands down and had them to commence at a point about where the gum tree stood on the bank of Julius branch, and fastened two or three strings of wire to trees to a point on the Tennessee river. There was no effort to make a straight line, such as both title papers to the respective tracts called for, but from the gum tree west to the Tennessee river the temporary wire fence ran a zigzag course following the line of saplings and trees. Mr. Cherry does not state that he intended this to be considered as a permanent division line between the two tracts. Nor does the complainant, in his evidence, testify that it was an agreed line between the parties. It is very evident that the fence was not regarded by either Mr. Cherry or the complainant as a per-

manent fence. It remained there for some years, but for some time prior to the time that the defendant purchased his land the fence erected by Cherry from the gum tree west to the bank of the river showed occasional strands of wire attached to the zigzag and crooked line of saplings and trees, and in several places completely down. It did not amount to an enclosure at the time complainant had Mr. Harbert make the survey for the purpose of locating the line, and at the time the county surveyor made the survey at the suggestion of complainant. There is no dispute as to the true location of the line. The strip of land in controversy is not covered by the deed of complainant to his tract of land, but is included within the boundaries and calls of defendant's title papers. Referring further to the question of an agreed line between the parties, it cannot be said that there was a dispute between the parties as to the location of the line. Nor can it be said that Cherry and the complainant could not properly locate the line from the title papers. They agreed and understood that it was a straight line from the gum tree west. It would have been a simple matter to locate the line for that distance, it being only eighty poles from the gum tree to the bank of the river. They both knew that it was not a zigzag line.

Another very material and potent circumstance tending to show that complainant, at the time the surveys were made by Harbert and the county surveyor, was not contending for a division line which had formerly been agreed upon between Cherry and himself, is the fact that he made no objection to complainant having the line run by Harbert, although he was not present at the time the survey was made, and it was at his suggestion that they have the county surveyor run out and locate the line. These facts would negative the theory now contended for by complainant that the line had been previously agreed upon between himself and Cherry and that he regarded the line agreed upon between them as fixed. He was not in possession of this strip of land at the time defendant built the permanent fence following the location of the line by the two surveyors. There was but a remanent of the old wire fence, which did not constitute an enclosure. It was completely down in places.

We are of the opinion that the facts of this case will not bring it within the rule of an agreed line between the respective owners as above set forth.

The original bill alleged that complainant was the owner of this strip of land and that it was covered by his title papers, and was to all intents and purposes an ejectment suit, and no effort to deraign title. If the strip of land was not covered by the title papers of complainant, and was not enclosed, and there had been no agreed line dividing the two tracts in the sense as above set forth, and the

defendant was in the possession of the strip of land in controversy, the complainant cannot obtain the relief sought by his bill, and we find no error in the decree of the Chancellor so holding.

It results that the assignments of error are overruled, and the decree of the Chancellor dismissing complainant's bill at the cost of complainant is affirmed. Complainant and surety on the appeal bond will pay the cost of this appeal.

Owen and Heiskell, JJ., concur.