B. B. THORNBURG et ux., and James D. Crowley, et ux., Plaintiffs–Appellees,

v.

Charles D. CHASE and wife, Mary Chase, Defendants–Appellants.

Court of Appeals of Tennessee, Eastern Section.

April 3, 1980.

Permission to Appeal Denied by Supreme Court July 28, 1980.

E. Patrick Hull, Wilson, Worley, Gamble & Ward, Kingsport, for defendants--appellants.

Lon V. Boyd, Boyd & Everett, Kingsport, for plaintiffs–appellees.

## OPINION

FRANKS, Judge.

This is a boundary line dispute. Defendants own a tract of land adjoining tracts of land owned by plaintiffs. Plaintiffs in their complaint and defendants in their cross-action asked the trial court to establish their common boundary line pursuant to T.C.A., §§ 16–607 and 16–608.

The property owned by the parties at one time was owned by I. P. Chase, grandfather of defendant, Charles Chase. I. P. Chase devised the property to his sons, Nathan and Charles Ritter Chase, who later orally partitioned the property. Subsequently, the property of Nathan Chase was subdivided into Hemlock Park Subdivision, which was surveyed by O. O. Graham, and a plat based on that survey was recorded in 1946. The Crowleys acquired their lots, a part of the Hemlock Park Subdivision, in 1959, and the Thornburgs acquired their lots, also contained in the subdivision, in 1971. Charles R. Chase conveyed a part of his property by deed dated November 6, 1970 to defendants herein.

Prior to the development of the Hemlock Park Subdivision and at the time Nathan and Charles R. Chase orally divided the property,[1] a fence was constructed between the properties and remained for many years and portions were intact at the time plaintiffs purchased their lots.

The disputed boundary is depicted on the recorded plat of the Hemlock Park Subdivision as a straight line between two set stones, running North 55 degrees, 30 minutes West, over a distance of approximately 1,059.5 feet. The basis for the dispute between the parties originated when, in 1971, defendant Chase engaged Daniel Saxon, a surveyor, to survey defendants' property. Saxon, following the plat, surveyed a straight line between the two set stones; however, the distance marked on the plat is greater than the straight line between the set stones by approximately 9 feet. Each set stone is in the fence line but the fence line bows slightly and at the apex of the bow the straight line is some 10 to 12 feet from the fence.

Subsequent to the survey, plaintiffs began exercising some control over the disputed area and this suit was precipitated in 1977, when defendant constructed a new fence along the line of the old fence. Plain-

---

1. The oral partition between Nathan Chase and Charles Ritter Chase was confirmed by a quit-claim deed dated June 19, 1950, which was recorded but is not in the record.

tiffs' suit contended the 1971 Saxon survey established the boundary between the plaintiffs' properties and defendants' property and that defendant Chase had agreed at the time of the survey that the line surveyed by Saxon was the actual boundary line.

The case was tried in April, 1978, and the chancellor rendered judgment in favor of plaintiffs, stating:

> [T]he proof shows and indicated conclusively that these parties did agree upon the boundary line.

> .   .   .   .   .

> The Court ... is of the opinion that the Plaintiffs ... established the correctness of the boundary line and that the boundary line is where the official surveyor placed the boundary line, and that from these iron posts along the straight boundary line as contended by the Plaintiffs in this case is the true and correct boundary line in this case.

On appeal, defendants contend that the evidence preponderates against the chancellor's decision.

■■■ An unascertained or disputed boundary line dividing the lands of adjoining property owners may be permanently and irrevocably established by a parol agreement between the landowners and the agreement does not fall within the prohibition of the statute of frauds. *Webb v. Harris,* 44 Tenn.App. 492, 315 S.W.2d 274 (1958); *Windborn v. Guinn,* 7 Tenn.App. 60 (1928); *Rogers v. Taylor & Co.,* 2 Tenn.App. 445 (1926); 12 Am.Jur.2d, *Boundaries,* § 78; 11 C.J.S. *Boundaries* § 67. However, there is no evidence in the record establishing a parol agreement to accept the line established by the Saxon survey as the true boundary line between the parties. The evidence, in fact, supports the opposite conclusion. On cross–examination, Thornburg testified thusly:

> Q.  [I]n the complaint [you] allege that ... Mr. Chase agreed that [the Saxon survey line] would be the property line. Now who was there when that happened?
>
> A.  Are you referring to the date that I talked with Saxon and Scott?

> Q.  You did not ever talk to Mr. Chase about it?
>
> A.  I had never met Mr. Chase before that time.
>
> Q.  ... I assume it was during that time that you have alleged that he agreed to something about the property line; did that ever happen?
>
> A.  I don't recall saying that he agreed, or I–
>
> Q.  In actuality, all he said was, 'I just want what is legally mine'?
>
> A.  That's correct;  yes, sir.
>
> Q.  And there was never any agreement that from now on we will say this is the line or that is the line?
>
> A.  No, sir.
>
> Q.  That was the only statement of that kind that was made;  is that correct?
>
> A.  Yes, sir.

Plaintiff Crowley was also unable to recall any conversation wherein Chase agreed to a boundary line:

> Q.  Now you I believe have related having a conversation with Mr. Chase during the time that the survey was being made.  Actually, all that Mr. Chase said was that he wanted what was legally his.  Isn't that correct?
>
> A.  That's correct.
>
> Q.  And that is about all you remember him saying about that?
>
> A.  That is the only specific comment that I remember.
>
> Q.  Are you actually sure that you even talked to him out there that day?
>
> A.  Yeah, I feel very sure of that.
>
> Q.  Who was there when you talked to him?
>
> A.  Let me withdraw that.  I said I was sure that I talked with him.  Let me say I am sure I heard him say that, put it that way.
>
> Q.  But it wasn't necessarily in conversation with you, was it?
>
> A.  Well I don't recall whether it was or not.  I was there when the operation was going on, and I suppose that I was talking to those people.

*Q.* Was there any time that Mr. Thornburg, and you, and Mr. Chase were all down there together and talked this over?

*A.* I don't recall it.

Defendant Chase testified:

*Q.* Now, while you were making the survey, I say you were making the survey, you were there and Mr. Saxon was there, did Mr. Crowley or Mr. Thornburg ever talk with you?

*A.* While we was making the survey?

*Q.* While you were in that general area?

*A.* No, sir.

*Q.* Did you say anything to them?

*A.* No, sir.

*Q.* Did they ever point out a proposed boundary line and ask you if you agreed to it?

*A.* No, sir.

*Q.* Did you ever make any agreement with them, Mr. Crowley or Mr. Thornburg, as to the location of that boundary?

*A.* No, sir.

We conclude that the evidence preponderates against the findings of the chancellor, T.R.A.P., Rule 13(d), and this issue is resolved in favor of appellants.

■ Defendants further contend that plaintiffs failed to prove clearly that they are the owners of the land in dispute, as required in boundary disputes by *T.C.A.*, § 16–607. To prove clearly that the parties are the true owners, simply means:

[T]hat the complainant must prove that he is the true owner or that he had become entitled to the possession of land adjacent to the boundary which he undertakes to have established, . . .

*Carr v. Wilbanks*, 45 Tenn.App. 372, 386, 324 S.W.2d 786, 792 (1958).

■ The chancellor did not address whether plaintiffs clearly proved they were the true owners of the land. Our review is *de novo* upon the record of the trial court and the parties are entitled to re-examination of the whole matter of law and fact appearing in the record. Where the evidence preponderates against the finding of the chancellor, it is our duty to enter such decree as the law and evidence warrant. *Cultra v. Douglas*, 60 Tenn.App. 116, 444 S.W.2d 575 (1969); *Loftis v. Stuyvesant Insurance Company*, 54 Tenn.App. 371, 390 S.W.2d 722 (1964).

Defendants acquired their property from Charles R. Chase by deed dated November 6, 1970, which described the property thusly:

Being all of the remaining lands owned by the party of the first part in the 14th Civil District of Sullivan County, Tennessee, *and lying North of Hemlock Park Subdivision and River Drive* . . . . [Emphasis supplied.]

This description establishes that defendants' southern boundary is the northern boundary line of Hemlock Park Subdivision. The deeds of the respective plaintiffs describe their northern boundaries by referring to iron pins, or pipe, in the line of the "Chase property". Both deeds specifically refer to the recorded plat of Hemlock Park Subdivision. None of the deeds refers to the fence. Saxon located the pipe and iron pins at the corners of plaintiffs' lots and testified the pins were in the old fence line.

■ In determining disputed boundaries, resort is to be had first to natural objects or landmarks, because of their very permanent character; next, to artificial monuments or marks, then to the boundary lines of adjacent landowners, and then to courses and distances. *Pritchard v. Rebori*, 135 Tenn. 328, 186 S.W. 121 (1916); *Minor v. Belk*, 50 Tenn.App. 213, 360 S.W.2d 477 (1962); *Doss v. Tenn. Prod. & Chem. Corp.*, 47 Tenn.App. 577, 340 S.W.2d 923 (1960). This rule of construction is to aid in determining the intention of the parties to a deed which is to be determined, if possible, from the instrument in connection with the surrounding circumstances. *Dearing v. Brush Creek Coal Co.*, 182 Tenn. 302, 186 S.W.2d 329 (1945); *Cates v. Reynolds*, 143 Tenn. 667, 228 S.W. 695 (1920).

■ Here, the artificial monuments or marks referred to in the deeds of the plaintiffs are iron pins. The stones are noted in

the recorded plat of Hemlock Park Subdivision and are also located in the old fence line. There are discrepancies between plaintiffs' deeds and the recorded plat of Hemlock Park Subdivision as to calls and distances. The surveyor, Saxon, testified that at one time he had surveyed Thornburg's property for Frank Johnson, Thornburg's grantor, who pointed out to him that the pins in the old fence line were the corners of his property line adjoining the Chase property.

The evidence preponderates that plaintiffs did not undertake to remove the old fence and openly and adversely occupy the disputed territory until after the Saxon survey of 1971. The artificial monuments and the old fence were in existence at the times plaintiffs acquired their properties. In this connection, *Pritchard, supra,* observed:

> The object in all boundary questions is to find, as nearly as may be, certain evidences of what particular land was meant to be included for conveyance. The natural presumption is that the conveyance is made after and with reference to an actual view of the premises by the parties to the instrument. The reason why a monument or adjacent line is ordinarily given preference over courses and distances is that the parties so presumed to have examined the property have, in viewing the premises, taken note of the monument or line. At 334–5, 186 S.W. 121.

We conclude, under these circumstances, the artificial markers control over the straight line protracted on the subdivision plat, particularly since the evidence in the record establishes the bow in the old fence line cannot be detected on a visual inspection of the premises and can only be ascertained through sophisticated surveying equipment which, the evidence infers, was not available to surveyor Graham at the time of preparation of the plat.

We conclude plaintiffs' common boundary with defendants is located along the old fence line, with the corners being identified as the iron pins referred to in their respective deeds.

The decree of the chancellor is reversed and the cause is remanded to the chancery court to enter a decree establishing the boundary line between the parties in accordance with this opinion.

Costs incident to the appeal are assessed equally against the plaintiffs.

PARROTT, P. J., and GODDARD, J., concur.