IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 27, 2000 Session

## MARY WILLIAMS SLACK, ET AL. v. BRYAN ANTWINE

**A Direct Appeal from the Chancery Court for Henderson County**
**No. 11988     The Honorable Joe C. Morris, Chancellor**

---

**No. W2000-00961-COA-R3-CV**

---

Plaintiffs sued to quiet title to property and to establish boundary line.  The trial court found that the deed description of plaintiffs' property established their title to the disputed property. Defendant has appealed.  We affirm the judgment of the trial court.

**Tenn.R.App.P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. and HOLLY KIRBY LILLARD, J., joined.

David A. Riddick, Jackson, For Appellant, Bryan Antwine

M. Dianne Smothers, Jackson, for Appellee, Mary Williams Slack

### OPINION

On March 5, 1998, plaintiff, Mary Williams Slack[1], filed a complaint in the Chancery Court of Henderson County, Tennessee, against defendant, Bryan Antwine, to quiet title to real property. The complaint alleges that the plaintiffs became equal co-owners of the subject property by virtue of the Last Will and Testament of Willie Williams.  The property is described in the complaint as follows:

> Located and being situated in the First (old 19th) Civil District of
> Henderson Country, Tennessee and being more particularly described
> as follows to wit:

---

[1] The complaint alleges that plaintiff is co-owner of the property with five siblings.  By order entered August 18, 1999, the siblings, Willie Melvin Williams, Lee Molen Williams, Etta Mae Williams, and Mozella Williams, were added as plaintiffs.

BEGINNING at a stake, hickory and red oak pointers on Adams line; runs thence West 32 3/5 poles to a stake, red but pointer; thence South 6 and 7/25 poles to a stake with white oak pointer; thence West 220 poles to a black oak, Adams Northwest corner; thence North 2 degrees West 130 poles to a stake, two hickory pointers, Lewellings corner; thence East 74 1/5 poles to a stake, chestnut hickory and black oak pointers; thence North 18 and 23/25 poles to a chestnut stump, with poplar pointer, Oakley's Southwest corner; thence with Oakley line North 87 degrees East 66 and 18/25 poles to a stake, chestnut and dogwood pointers, near the road; thence to and with said road South 1 1/4 degrees East 30 4/5 poles South 75 degrees East 28 poles, South 29 degrees East 16 poles, South 84 degrees East 40 poles; thence leaves the road runs North 81-3/4 degrees East 37-2/5 poles to a stake, three gums pointers on the East line of said Donnell tract; thence South 100 poles to the beginning and containing 194 acres, more or less.

This being the same tract of land conveyed to Willie Williams by Warranty Deed of record in Deed Book 87, page 238-39 [entered in Note Book 7, page 494] of the Register's Office of Henderson County, Tennessee.

The complaint alleges that plaintiffs' father, Willie Williams, acquired the land by a warranty deed recorded on November 20, 1963 in Book 87, page 238-39 [entered in Note Book 7, page 494] Register's Office of Henderson County, Tennessee. The complaint further alleges that by Quitclaim Deed of record at Deed Book 163, page 280-82, Register's Office of Henderson County, Tennessee, grantors Roger Lyons, Edna Lyons, Delores Martinez and Eddie D. Lyons quitclaimed their interest in a tract of land contiguous to the Williamses' property to Mike Johnson, James Johnson, Chris Johnson and Earl Buice. The complaint avers that Mike Johnson, James Johnson, Chris Johnson, and Earl Buice conveyed a part of said property to Bryan Antwine by warranty deed dated July 29, 1996, recorded in Deed Book 179, page 687-88 in the Register's Office of Henderson County, Tennessee. The complaint alleges that the deed purports to convey a part of the land owned by plaintiffs. The complaint alleges irreparable harm unless Mr. Antwine and his agents or assigns are restrained from continuing to trespass on plaintiffs' land.

A Temporary Restraining Order was entered prohibiting defendant, his agents or assigns from making any entry upon said property. Defendant's answer denies the material allegations of the complaint and avers that the complaint fails to state a claim upon which relief can be granted. The answer also avers that defendant and his predecessors in title have used, maintained and acquired rights in the disputed property under the doctrine of adverse possession and/or prescription.

A non-jury trial was held on September 23, 1999, and the case was taken under advisement. On November 24, 1999, the Chancellor filed findings of facts and conclusions of law, which states in part:

> Plaintiff's father, Willie Williams held said land by a Warranty Deed of record at Book 87, page 238 - 39 [entered in Note Book 7, page 494] of the Register's Office of Henderson County, Tennessee, said deed being recorded on November 20, 1963.

> The Defendant holds his interest in a certain tract of land by virtue of a warranty deed of record at Deed Book 179, page 687 - 88 of the Register's Office of Henderson County, Tennessee, which was executed in 1996 by Mike Johnson, James Johnson, Chris Johnson and Earl Buice.

> Both Mr. Lyons and Mike Johnson consulted Paul New in 1992 to survey the tract of land which Johnson intended to purchase from the Lyons family. Mr. New was hired by Mike Johnson to survey that tract.

> Mr. Johnson wanted the corners of the Lyons property established.

> Mr. New testified that the "next step" in the survey process is to determine the surrounding property owners and obtain copies of their currents deeds. He did this. Mr. Richard Dodds was hired by the Williams family in 1997 to check the western boundary line of the Williams property, to see if there were encroachments on that boundary. Mr. Dodds also obtained copies of adjoining landowners deeds.

> Jeff Tulley, the Dodds survey party chief, found that the legal description in the 1992 deed to the Johnson's and the 1996 deed to Antwine cause an "overlap" or discrepancy with the Williams deed of 1955. This overlap was verified by Richard Dodds, the licensed surveyor.

> The "overlap" caused by the legal description set forth by Mr. New results in a loss of approximately 17 acres from the Williams tract and increases the Lyons [now Antwine] acreage from 97 acres to 115.62. Both surveyors found this change occurred in the 1992 deed containing Mr. New's description.

Prior to the deed of 1992 containing the description created by Mr. New, the deeds in the Lyons chain of title would not close. Mr. New himself found that the description in the Lyons chain would not close.

Mr. New made adjustments to the calls in the Lyons deed, at the request of Mr. Lyons and Mr. Johnson in 1992, so that the calls in the Lyons deed would close. The northern boundary was the only boundary of the Lyons tract to which these persons agreed, and they instructed Mr. New to mark the other boundaries of the Lyons tract "as the (Lyons) deed calls it." When the calls would not close he made them "fit" as best he could, even though this resulted in an overlap of approximately 17 acres into the Williams' tract. At no time did Mr. New survey or run the calls in the Williams deed chain, to see if those calls would close.

The only "natural monument" which Mr. New found in making his survey of the Lyons tract in 1992 was a hole in the ground where an oak stump might have been. Mr. New could not tell what kind of tree had grown there and there were other such holes in that same area.

Mr. New found no other man placed monuments other than some fence remains, which would show the boundary between the Lyons tract and the Williams tract. Mr. Tully and Mr. Dodds found no such standing fences at the western boundary of the Williams tract, using the calls as set forth in the Williams' deed. Mr. Dodds found a fence remnant close to where the Williams' tract western line, but no continuous tree line or fence line. The disputed line is hilly, gully woodland.

When a deed's calls will not close and the calls of other adjoining tracts will close, the surveyor would use one of the deeds that will close as the determining description.

When a surveyor finds two contiguous deeds which both close but which have a true overlap in their calls, the more senior deed should prevail. The Williams' deed is senior to the earliest deed in the Lyons' chain of title by over 40 years. Both Mr. New and Mr. Dodds found the Williams' chain to precede the Lyons' chain by over 40 years. According to Mr. New, original deed seldom close very tightly, especially if they['re] old. Mr. Dodds found that the calls in the Williams' description and deeds did close.

None of the persons whose land presently adjoins the Lyons and Williams tract have independent knowledge of the boundaries of their tracts, other than the descriptions in their deeds. Mr. Yarborough showed Mr. New where he *thought* his boundary with the Lyons tract was, and the Gowans did not know where their boundary was. Mr. New never went on site with any of the Williams heirs to determine where they thought their line was.

The legal description created by Mr. New in 1992 as a result of his survey which was incorporated into the quitclaim deed from the Lyons to the Johnsons did not disclose any discrepancy with any adjoining landowners calls, although Mr. New was aware of such discrepancy.

Mr. Dodds found an old hedge row running east-west across the road at the northern boundary of the Williams tract which matched the calls on the Williams' deeds. The northern boundary set by Mr. New for the Lyons tract does not match this old hedge row, and in fact, again overlaps the Williams tract, resulting in less road frontage for the Williams' tract. Mr. New's northern boundary of the Lyons tract comes to rest where there is no marker of any kind. Mr. Dodds found old hedge rows to mark the south boundary, north boundary of the Williams' tract. Mr. Jeff Tulley (working as crew chief for Dodds Surveying) found a good fence line running north from the point of beginning on the Williams' southeast corner to the northeast corner which contained trees of up to 30 inches in diameter. This fence row marks the eastern boundary of the Williams' tract. Mr. Tulley also found the hedge row at the northern boundary of the Williams tract and the calls of the Williams deeds match with this northern boundary hedgerow. Mr. Tulley found old hedgerows to mark three of the four 'sides' of the Williams' tract, with only the disputed western boundary not being so marked. Using these monuments, the calls of the Williams deeds close.

Jeff Tulley ran the entire boundary of the Williams' tract on foot and found hedgerows and/or old fences to mark the southern, eastern and northern boundary of the tract. He found no monuments to mark the disputed western boundary, no trees, no fences or other markers. He turned north when the deeds calls instructed such a turn. He found only some fence remnants where Mr. New had placed the disputed line, but could not determine which way those remnants had been running. Mr. Tulley ran his instruments in the disputed area for about four hours and did not find an existing fence running north and

south on Mr. New's boundary. He did find the iron pins set by Mr. New in 1992. Mrs. Mary Slack, one of the Williams heirs, did not speak with either the Lyons grantors or with Mr. New about the boundary of the Williams tract in 1992. Mrs. Slack remembered an old wire fence which was on the western boundary of the Williams tract in 1985, and which was already down on the ground in 1985. When Mr. New surveyed the land in 1992, he did not look for fencing in the area where Mr. Tulley found the disputed boundary. Mr. Tulley found some other fence that ran in a different direction. If this fence remnant is used as the disputed boundary, it does not match the calls in the Williams' deeds. Mr. New never looked for any man-made monuments where Mr. Tulley found the disputed boundary to lie, as Mr. New was going a certain distance as called for by the Lyons deed and he was moving from west to east from the creek (Gourley Creek). Mr. New never ran the calls on the Lyons deed from east to west, to see if the calls would match what he believed the Lyons' western boundary to be, the creek.

WHEREFORE, based upon the foregoing findings of fact, the Court reaches the following CONCLUSIONS OF LAW:

1.     That the boundaries of two tracts of land located in Henderson County, Tennessee, are in dispute and have been brought before the Court for resolution;

2.     That the Defendant has not raised nor proven any claim of adverse possession to any portion of the disputed tract.

3.     That both the Plaintiffs and the Defendants obtained surveyors who ran the calls and descriptions that [sic] parties respective tracts. Further, that only Dodds Surveying ran on the ground and by computer the calls of the Williams deeds.

4.     That the Court must begin with the legal description of the two tracts of land in determining the actual boundaries of each tract. Further, that in this case, none of the corners of the two tracts are bounded by a natural monument or marker. Further, that artificial marks or monuments mark three of the four boundaries of the Williams tract. Further, that the courses and distances of the Williams tract description will close and return to the point of beginning.

5.     Further, the evidence shows that Jeff Tulley of Dodds

Surveying relied not only on the existing old hedgerows on three sides of the Williams tract for guidance, but shows that he found that the landowner to the east of the Williams tract had worked the land up to the easternmost boundary of the Williams tract, and had stopped at the north-south hedgerow.

6.      That all of the surveyors found that the calls in the Lyons tract, (which became divided into the Antwine tract) would not close back to the point of beginning.  Further, that only by making adjustments to said calls and thus changing the description could Mr. New make such calls close.

7.      That the changes and adjustments made by Mr. New result in an encroachment onto the land contained in the Williams tract, which tract description has been unchanged for almost a hundred years.

8.      That the disputed portions of the tracts, containing approximately 17.34 acres and made by Dobbs Surveying are part and parcel of the Williams tract.  Further, that the deed of Antwine should be reformed to reflect such boundaries and properly recorded.

By an order entered nunc pro tunc on March 23, 2000, the chancellor decreed that the Williamses are the lawful owners of the tract of land in dispute, that defendant remove any encroachments which have been placed upon the land, and cease from any attempted possession or use of such tract.  The chancellor further ordered that defendant shall take such action as necessary to reform his deed of record to conform with the court's order and to record the reformed deed in the Register's Office of Henderson County, Tennessee.

Defendant appeals the order of the chancellor, presenting one issue as stated in his brief: "Whether the chancellor properly set the boundary between the parties given all the evidence presented at trial?"  Since this case was tried by the trial court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court.  Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

Mr. Antwine contends that the wrong criteria was used to determine the disputed boundary line.  He asserts that the boundary line set by Mr. New, his surveyor, is based on a man-made monument, fence remnants running north and south, as evidence of the boundary, and that the Williamses' boundary determination relied upon calls and distances contained in a deed almost one hundred years old.  Mr. Antwine contends that the evidence in this case fails to support the chancellor's ruling regarding the boundary, and the ruling is therefore in error.

We begin by reviewing the law in Tennessee with regard to disputed boundary lines. The court in *Thornburg v. Chase*, 606 S.W.2d 672 (Tenn. Ct. App. 1980) stated:

> In determining disputed boundaries, resort is to be had first to natural objects or landmarks, because or their very permanent character; next, to artificial monuments or marks, then to the boundary lines of adjacent landowners, and then to courses and distances. (Citations omitted).

*Id.* at 676. *See also Minor v. Belk,* 360 S.W.2d 477 (Tenn. Ct. App. 1962) (a fence line erected prior to the boundary dispute, could not be used as a line from which to measure the boundary where the deeds referred to fences that marked boundaries and were clear and unambiguous as to the proper boundary marked by steel stakes and where no acquiescence of the fence as a boundary by the predecessors of the present parties was shown.) However, calls in a deed which are most certain and about which there is the least probability of mistake or inaccuracy prevail. *See Richardson v. Schwoon,* 3 Tenn. App. 512, 528 (1925). The boundaries of a tract of land are not usually delineated by the quantity or acreage, however, where boundaries are in doubt, the quantity may become an important factor. 12 Am. Jur. 2d *Boundaries* § 10. *See also Bynum v. McDowell,* 3 Tenn. App. 340 (1926). Where there is a conflict, an older grant or deed will prevail over a younger grant or deed. *See Hitchcock v. Southern Iron & Timber Co. ,* 38 S.W.588 (Tenn. Ct. App. 1896)(an older grant will prevail over a younger grant that is founded on an older entry that was not in evidence.)

Mr. Antwine argues that under the holding in *Thornberg v. Chase, supra,* resort to an artificial monument, in this case fence remnants indicating a fence line running north and south, by Mr. New was proper in the determination of the disputed boundary. In *Thornburg, supra*, the Court determined that in resolving a boundary dispute, a crooked fence line, an artificial marker, controlled over a straight line protracted on the disputed property. Important to the decision of the court was that the subject fence was in existence at the time that the plaintiffs acquired their property and the bow in the fence line was not ascertainable except through sophisticated surveying equipment which the evidence inferred was unavailable to the surveyor at the time that plat was prepared. *Id.* at 676.

In the instant case there is no dispute that the Williamses' deed is older than the earliest deed in the Lyons chain of title describing property encompassing the Antwine tract. With regard to the disputed boundary, the trial court found that "[t]he only 'natural monument' which Mr. New found in making his survey of the Lyons' tract in 1992 was a hole in the ground where an oak stump might have been" however, Mr. New was unable to testify with certainty what kind of tree had actually grown there. In addition, there were a number of other such holes in the area. The chancellor further found that Mr. New located some "man placed monuments"consisting of some old fence remnants, which he claim showed the boundary between the Lyons' tract and the Williamses' tract. However, the chancellor found that Mr. Dodd found no continuous fence line running in this direction to denote a boundary fence.

We distinguish the facts of this case from those in *Thornberg, supra,* where the existence of the fence line in question was not a controverted fact. The testimony of Mr. New regarding the validity of his boundary lines is controverted by the testimony of Mr. Dodd and Mr. Tulley. In making his survey, Mr. Dodd found a hedgerow running east to west across the road at the northern boundary of the Williamses' tract matching the calls on the Williamses' deeds. Mr. New's northern boundary does not run along the hedgerow and comes to rest where there is no marker, giving the Williamses' tract less road frontage than indicated by their deed. Mr. Dodds also found an old hedgerow marking the Williamses' southern boundary and Mr. Tulley, crew chief for Dodds Surveying, found a fence line marking the eastern boundary of the Williamses' tract. Mr. Tulley also found old hedgerows marking three of the four boundaries of the Williamses' tract, with only the disputed western boundary not so marked. Using the hedgerows, the calls and distances of the Williamses' deeds close. Mr. Tulley found no monuments to mark the western boundary. Mr. Tulley testified to spending about four hours in the disputed area, yet did not find an existing fence running north and south marking Mr. New's boundary, but he did locate the pins set by Mr. New in 1992. Mr. New never ran the calls and distances on the Williamses' deed from east to west to see if the calls matched what he thought was the Lyons' western boundary, Gourley creek.

Where there is a conflict in testimony requiring a determination of the credibility of witnesses the decision of the trial court will be given great weight on appeal, unless other real evidence compels a contrary conclusion. *Franks v. Burks,* 688 S.W.2d 435, 437-38 (Tenn. Ct. App. 1984). (Citations omitted). Two surveyors testified in this case and the chancellor had the benefit of observing the surveyors as they testified with regard to their activity in locating boundary lines. As did this Court in *Franks, supra,* we must consider the weight to be given the trial court's determination of the credibility of the witness. The chancellor found that the changes and adjustments in the description made by Mr. New caused an encroachment onto the Williamses' tract consisting of approximately 17.34 acres and that the Antwine deed should be reformed to reflect the boundaries depicted on the plat made by Dodds Surveying. Considering the testimony of both surveyors with deference to the determination of credibility by the chancellor, we cannot say that the evidence preponderates against the finding of the trial court.

A party may not, by an ex parte survey and marking of lines, fix the boundary of his land differently than that called for in his deed. *Woodfolk v. Cornwell,* 38 Tenn. 272, 1 Head 272 (1858). In that case the plaintiff and his seller surveyed and marked the lines of land claimed without the knowledge of adjoining landowners, and departed from the calls in the deed. The *Woodfolf* Court held that the deed controlled the boundary, and the plaintiff was not entitled to the land included by his ex parte survey.

The chancellor also rejected Mr. Antwine's claim to having acquired the approximately 17.34 acres in dispute through adverse possession, stating: "the Defendant has not raised nor proven any claim of adverse possession to any portion of the disputed tract." The evidence does not preponderate against this finding.

Accordingly, the order of the trial court is affirmed, and the case is remanded to the trial court for such further proceedings as may be necessary. Costs of this appeal are assessed against the Appellant, Bryan Antwine, and his surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.