IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 30, 2002 Session

## WILLIAM C. DUTY and wife WANDA DUTY, v. JOSEPH R. DAUGHERTY and LORENE DAUGHERTY

**Direct Appeal from the Chancery Court for Scott County**
**No. 8568     Hon. Billy Joe White, Judge**

**FILED NOVEMBER 13, 2002**

**No. E2001-02861-COA-R3-CV**

In this boundary line dispute, the Trial Court established the boundary line between the parties' properties based on testimony that prior owners had agreed on the location of the boundary, which altered the boundary established by an accurate survey. We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and CHARLES D. SUSANO, JR., J., joined.

Harold G. Jeffers, Oneida, Tennessee, for Appellants, William C. Duty and wife, Wanda Duty.

Max E. Huff, Oneida, Tennessee, for Appellees, Lorene Daugherty and Joseph Daugherty.

### OPINION

In this dispute over the location of a boundary line between the parties' properties, after hearing evidence, the Trial Court said:

> . . . I think Mr. Reed's survey [plaintiffs' surveyor] correctly shows the deed boundaries. Barring everything else, barring some other theory, that would correctly make the boundary between these properties.
>
> . . .
>
> If there is a legal boundary agreement as testified to by Raney Daugherty, the

Court will set the boundary line between the angle iron and the black gum.

In the Final Decree, the Trial Court established a boundary in accordance with an agreement testified to by Raney Daugherty.

On appeal, plaintiffs argue that the evidence relating to the verbal agreement to establish a boundary between the tracts was in violation of the parol evidence rule, and that defendants are estopped under their Deed from claiming the boundary line established by the Court.

Everett and Roy Daugherty were brothers. In 1961 they purchased approximately 4 ½ acres of land carved out of the Pemberton Estate. Roy, now deceased, was married to Lorene Daugherty; his son is Joseph Daugherty, a defendant herein. Everett, now deceased, was Wanda Daugherty Duty's father, a plaintiff herein. In 1962 Everett and Roy decided to partition their property. Roy took the northern portion; Everett the southern. Deeds were drawn to make the partition, but no survey was done at the time. In 1998 plaintiffs hired Jim Reed to survey their property. In making his survey, he talked to the adjoining landowners and found no dispute as to any surrounding boundaries.

Reed testified he established the boundary using the relevant deed descriptions. First, he located all four corners of the original 4 ½ acre tract which was clearly marked and are not disputed. The plaintiffs purchased their property from Wanda's father in 1968. Everett continued to live on the property until his home place burned in 1970, and plaintiffs basically let their property sit vacant while William Duty was stationed overseas in the military.

In 1998, Joe Daugherty moved his mobile home onto the property, resulting in this dispute. During the course of the trial, Wanda Duty testified that when Reed began his survey, Lorene Daugherty advised her "I know that Joe is over on your property a few feet, but we'll just have to work it out". Raney Daugherty, Roy's brother, testified for defendants. The Trial Court found Raney credible and pivotal in deciding where the boundary line was located. Raney testified that he had understood Roy and Everett to have switched land back and forth several times. However, this is not borne out by the deeds of record. Raney was not familiar with any of the deeds, but he had been shown the line as a child. He testified that when he was 12 or 13 years old, Roy and Everett got into a fist fight over the boundary line. They resolved it by walking down through the area and then driving an angle iron in the western line, which he witnessed, and they also designated a black oak or gum tree in the back as the eastern corner. He further testified that it was "always known by other family members" that the line was at the iron stake, and that it was rumored throughout the family that plaintiffs did not make a claim when Roy was alive, because they were afraid of him. When this dispute arose, Joe asked his advice and Raney advised Joe that he should come to an agreement or buy it, rather than go into court.

Surveyor Tony Crutchfield surveyed the Daugherty property at Joe Daugherty's request in December of 2000. He used the subject deeds and those of adjoining property owners, and located all of the corner markers, confirming Reed's survey. He did not find the iron pin Reed

had placed on the eastern line, but was able to locate the exact place where it should have been by using Reed's survey.

Crutchfield testified the old Daugherty and Duty deed descriptions only used distances, and the two parcels' distances didn't fit together, again confirming Reed's findings. Crutchfield's survey locates the Daugherty southern line as running from the angle iron to the black gum tree. Significantly, he essentially based this line from meeting with Joe Daugherty who showed him the angle iron and also pointing out what he contended to be the dividing line. Crutchfield testified that he could not conclusively determine the line.

> Q. In your opinion, what is the Daugherty line, based upon what you've seen at the scene - I mean, the land, the deeds?
>
> A. My honest opinion on the dividing line between Daugherty and Duty is one where I - I cannot take these warranty deeds and give you an honest assessment about where this property line is located. As I have noted on this exhibit, on the survey that I've done for Mr. Daugherty, this is a - basically this where he's claiming to by occupation and possession, and that it overlaps the Duty survey that was performed by Reed.
>
> . . .
>
> A. I found that - basically, I - what Mr. Reed placed in there was based on probably the best available evidence given what he had to work with on that. It does overlap. Like I said, it's difficult to mesh his - the deeds that he had to work with, the deeds that were - that I had to work with as my subject piece. I that it was - to me it was inconclusive.

On cross examination, Crutchfield admitted that except for the line in dispute, he does not take issue with any other lines in Reed's survey. He admitted deviating his line south of Reed's line as he approached the mobile home, and he based this on meeting with Joe Daugherty. Significantly, Crutchfield testified:

> Q. So you have no basis by deed or title instrument for locating a line south of the Reed line, other than what Mr. Daugherty has told you and his claim for possession?
>
> A. Yes. Well, that's - that's essentially what my testimony was, that I answered to previously. . . .

Our review in boundary line disputes is *de novo* with a presumption of correctness of the trial court's factual determination. *Thornburg v. Chase*, 606 S.W.2d 672, 675 (Tenn. App. 1980); *Tenn. R. App. P. 13(d).* However, the interpretation and legal effect of a deed is a matter of

law, and the Trial Court's determination on such matters creates no presumption of correctness in the appellate court. *Brown v. Brown*, 320 S.W.2d 721 (Tenn. 1958).

Plaintiffs did not object to the admission of Raney Daugherty's testimony regarding Roy and Everett's fist fight and then driving an angle iron and designating a black gum tree as the line markers for a boundary. However, the parol evidence rule is not a rule of evidence but a rule of substantive law. No exception or assignment of error is necessary to ensure its application. *Maddox v. Webb*, 562 S.W.2d 198 (Tenn. 1978). The deeds involved in this case do not contain ambiguous language, nor do they contain "irreconcilable conflicts"; that cannot be resolved by applying the rules of construction for deeds. The survey in 1998 revealed some inaccurate distances in the deed descriptions, but otherwise, the language of the deeds themselves is clear and consistent and needs no interpretation to ascertain the intent of the grantors. These deeds enabled the surveyor to determine the boundaries. In this connection, see *Moon v. Webb*, 584 S.W.2d 803 (Tenn. Ct. App. 1979); *also see Muray v. City of Red Boiling Springs*, 1985 Tenn. App. Lexis 3281).

The parol evidence of Raney Daugherty, upon which the Trial Court relied, was inadmissible. Raney's testimony, as well as defendants, varied and/or contradicted the written language of the deeds in placing the eastern point at a black oak or black gum tree. All of the deeds unambiguously place the eastern point "to a set stone in Pemberton's line"– not to a tree and the western side is clearly described as twelve feet north of the Burress Tract. The testimony altering these points was, therefore, inadmissible. An unascertained and disputed boundary line dividing the lands of adjoining property owners may be established by parol agreement and is not within the State of Frauds. *See Thornburg v. Chase,* 606 S.W.2d 672, 674 (Tenn. App. 1980). Inasmuch as Everett and Roy originally partitioned this property, they would be presumed to have known and agreed upon the instruments they drew. Their deeds to each other are consistent and complimentary in the line description. Clearly, the evidence shows that the Reed survey correctly "shows the deed boundaries" as found by the Trial Court. Since the parties' deeds established the boundary line, there was no basis to resort to parol evidence to establish a boundary line at a different place. Accordingly, we reverse the Judgment of the Trial Court and remand with instructions to establish the boundary line between the parties as determine by the Reed Survey.

The costs of the appeal are assessed to defendants Joseph R. Daugherty and Lorene Daugherty.

_____
HERSCHEL PICKENS FRANKS, J.