LEONARD DOSS and BLANCHE LEE DOSS v. TEN-
NESSEE PRODUCTS & CHEMICAL CORPORA-
TION. —340 S. W. (2d) 923.

Middle Section.  September 2, 1960.

Certiorari Denied by Supreme Court December 9, 1960.

578

T. A. Greer, Jr., Dunlap, for plaintiff.

A. A. Kelly, So. Pittsburg, for defendant.

HUMPHREYS, J.   The original bill in this cause was filed by Leonard Doss and Blanche Lee Doss against Tennessee Products & Chemical Corporation for the purpose of enjoining the defendants from cutting trees and strip mining coal on the land described in the bill, and to recover for the value of the coal and timber, and the damage done to the land by the strip mining. The bill alleged the complainants were the owners in fee of the land under a deed exhibited to the bill and relied on the

statutes of limitation contained in secs. 28-201 through 28-208, T.C.A. The bill also alleged that the tract of land was at the time of the filing of the bill in the possession of the complainants and that a house and cleared land had been maintained on the tract for many more than seven continuous years by complainant and his predecessors in title. The defendant answered and denied that the boundaries of complainants' land were located so as to include the place of defendant's activities; denied that complainants had had seven years continuous possession of the lands upon which defendant was alleged to have trespassed; averred that title to the lands where defendant had carried out its admitted mining activities was vested in W. J. Morgan, under whom defendant claimed as a lessee for the use and occupancy of the lands; alleged that complainants and their predecessors in title had failed to pay and keep paid the taxes on said land during twenty years preceding the date of the filing of the original bill.

■ In the court below, and here, the defendant has responded to the suit as though it were in ejectment, which it is not. It is a suit for an injunction to restrain defendant from damaging complainants' property and from continuing in its trespass thereon, and to recover damages on account thereof. The original bill avers title and possession to be in the complainants. This action is in principle similar to the law action of trespass quare clausum fregit, and complainants are entitled to recover if they can show either actual possession of the land in question, or a valid legal title carrying with it constructive possession, and a trespass by the defendant without justification.

It appears complainants purchased a twenty-five acre (more or less) tract of land from Herbert and Hilda Caldwell in August, 1949, and soon thereafter moved into the house thereon, in which their grantors had lived. That, thereafter they exercised dominion over the tract by cutting timber thereon and by farming. In 1952, they went to Baltimore Md. to take employment. Upon their return in August, 1957, they found strip mining activities being carried on by defendant upon land they had always claimed under their deed. They then brought suit for injunction and trespass.

In the record title to the W. J. Morgan land it appears that in September, 1914, D. T. Layne and Lula Layne conveyed the surface interest in the Morgan lands to J. R. Morgan by a deed which described the south boundary line of the lands conveyed as ''Beginning at a spruce pine on the bluff of the mountain near where the waters pour off, being A. Higgins Northwest corner; thence south 62 degrees, east 41 poles to a chestnut in the line of the T.C.I. and R.R. Co.'' In the record title to the Doss tract, it appears that in 1938 D. T. Layne, et ux., conveyed the tract to John Brown, who conveyed it in 1943 to Herbert Caldwell, who conveyed it to complainants in 1949. In complainants' chain of title, the north line of the tract of land, the line separating the lands of complainant and defendants is described as beginning ''on a rock in Higgins Gap, going eastwardly to an oak corner in line of Tennessee Coal Iron & R. R. Co; then following the Tennessee Coal Iron & R.R. Co. line southwardly;''. When the complainants returned from Baltimore, and found the strip mining activities being carried on upon what they had always understood was a portion of their tract of land, they employed a surveyor, W. P. Gibson, with

forty-four years experience, to make a survey and to determine whether defendant was trespassing across their north boundary. This survey began on a standing rock near Higgins Gap. From this beginning point, which is admitted to be approximately correct by the defendants, he surveyed a line eastwardly to a large stump hole in the T.C.I. line. He testified that although there were no calls in complainants' deed for the compass bearing upon which he surveyed, he surveyed along a line of old marked trees, and in accordance with the reputation in the community as to the location of the line and along a line between the two monuments called for in the Doss deed, the stone and the place where the tree stood in the past; that he found a sideline tree bearing directly on the stump hole where the northeast corner, described in the deed as a chestnut oak, must have stood; that now there was only a large hole in the line, of the sort that is left when a tree is removed. That there was also another line tree nearby and several on the north line, all of which clearly established that the north line of complainants' tract ran north 72 degrees east, 855 feet to the hole where the oak stood in the T.C.I. line, and not south 62 degrees east, 745 feet to said line, as contended by defendant.

It can be stated without further analysis of the proof, that if complainants' north boundary runs north 72 degrees east to the hole in the T.C.I. line, rather than south 62 degrees east to the same line, the strip mining activities admittedly carried on by defendant, acting under the lease from Morgan, were carried on upon complainants' land and 5,000 tons of coal were mined therefrom of the reasonable value of 35 cents per ton.

The Chancellor found the preponderance of the evidence established the correct location of the Doss north boundary line as running from the standing rock near Higgins Gap north 72 degrees east to its intersection with the T.C.I. line, where the oak once stood and where there now is only a hole; that the complainants had actual possession of this tract and that even though both the Doss tract and Morgan tract deraign from a common source, the burden of proof is that the line in fact ran as contended by complainants. In conformity with this opinion, a decree was entered awarding complainants $1,750 against defendant, declaring the south line of the Morgan tract and the north line of the Doss tract to be as above stated and making permanent the temporary injunction against trespass which had originally been granted. Defendant has appealed from this decree and assigned one error.

The error assigned is to the effect the court erred in holding complainants were the owner in fee and entitled to the possession of lands described in the original bill, and in decreeing the location of the same upon the ground so as to include the lands whereon the defendant had mined and removed coal under lease from W. J. Morgan, and erred in overruling defendant's plea of title to said lands in its lessor, W. J. Morgan, and entering judgment against it and taxing it with the costs. This assignment of error is supported by some five primary contentions which we will discuss in the order in which they are made.

First, it is said the assignment of error must be sustained because the great weight of the evidence proved a valid subsisting legal title in W. J. Morgan, supported by actual possession for almost twenty continuous years, to the lands which defendant had under

lease. With respect to this contention the Chancellor held that the defendant had proved W. J. Morgan had title to the Morgan tract but that the south boundary of the Morgan tract ran north, 72 degrees east, from the standing rock, the beginning point, not south, 62 degrees east, and that this line did not take in the area strip mined by the defendant under the Morgan lease. We are constrained to agree with the Chancellor with respect to this issue. The defendant did prove a valid subsisting legal title in W. J. Morgan to the Morgan lands. It did not meet, however, the proof introduced by complainants with respect to the actual location of the south boundary of the Morgan tract. The deraignment of a paper title in Morgan is not enough. The location of the land covered by that title is the all-important question. Where a defendant relies upon legal title as a justification for trespass of lands in actual possession, the paper title must be supported by proof that the particular land trespassed upon is covered by that title. In other words, where as in this case, the proof is that complainants are actually in possession of a tract of land and claiming it to a particular boundary, and that they and their predecessors in title have maintained actual possession to that particular boundary, one who defends against a trespass across that boundary by a legal title which he contends carries his lands to another boundary, which if established could (depending on the nature of the possession) absolve him of a trespass upon complainants' land, must prove the location of that boundary upon the land. The burden of the proof is to the effect that, although W. J. Morgan's south boundary line is described in his deed as south 62 degrees, east, the actual boundary line, long recognized by Morgan and complainants and complainants' prede-

cessors in title, runs north 72 degrees east. So, we must hold, as did the Chancellor, that the Morgan south boundary line does not run south, 62 degrees east, but north, 72 degrees east. And, since this is so, defendant has not proved a valid legal title to the particular portion of the land in controversy, and Morgan's actual possessions, within the boundaries of his land as described in his title papers, none of which were south of the north, 72 degrees east, line, do not establish actual possession for almost twenty continuous years to the land which it had under lease, as defendant contends.

■ Defendant's second contention is that complainants failed to establish a valid legal title, under possessory statutes, to the land where the mining operations were carried out and that the complainants also failed to prove any possessions within the disputed area and failed to prove continuous possession for seven years or more. This contention must be denied for the reasons heretofore pointed out, that where complainants prove they are in possession of the land in question to the north 72 degrees east boundary line, as the Chancellor held and as we hold, and where defendant fails to prove a valid subsisting legal title to that particular land which would authorize his peaceful entry thereupon, then in an injunction and a trespass suit of this character complainants are entitled to recover. Complainants are not required to establish a valid subsisting legal title to the land, actual possession thereof and absence of valid legal title in the defendant is enough. Union Tanning Co. v. Lowe, 148 Tenn. 407, 255 S. W. 712; Pepper v. Gainesboro Tel. Co., 1 Tenn. App. 175.

Defendant's third contention is that the great weight of the probative evidence established defendant's lessor's south boundary line as running south 62 degrees east to the T. C. I. line rather than north 72 degrees east. The Chancellor held to the contrary, and we do not find the preponderance of the evidence to be against the Chancellor's holding. To the contrary, the weight of the probative evidence is against the defendant with respect to this contention.

Defendant's fourth and final contention in support of its assignment of error is that both the complainants and W. J. Morgan deraign title from D. T. Layne, and by conveyances out of Layne and by operation of law, the common boundary line between the two tracts of land was established to run from a spruce pine at Higgins Gap south 62 degrees east to the T. C. I. & R. Co. line. We think that this contention must be denied for reasons we have already stated. In a suit involving the location of a boundary of rough mountain land the question as to the true location of the boundary is not always answered by reference to the calls for courses and distances in the title papers. In fact, it is the rule that in locating a boundary, calls for courses and distances are considered last in order of importance. The question can only be answered by going upon the land and determining the line that actually separates the two tracts of land as that line may be established by monuments, by recognition and acquiescence, by reputation, by the exercise of dominion over the lands by the respective parties on either side of the recognized line resulting in a situation having the elements and semblance of an estoppel, by agreement of the parties, and other means. To a degree, several of these various means of determining a line

have been employed in this case. First, the monuments referred to as the beginning and ending point of the Doss north line were discovered and established by proof of witnesses. The testimony of these witnesses is corroborated by aged blazemarks indicating that the northeast corner, which is the one primarily in dispute, was located as contended for by complainants. That lines actually marked must be adhered to though they vary from the course or distance is well settled. Simms' Lessee v. Baker, 3 Tenn. 146, 12 Fed. Cas. No. 12,868; Hickman v. Tait, 3 Tenn. 460; McNairy v. Hightour, 2 Tenn. 302, 304; Fly v. East Tennessee College, 34 Tenn. 689; Newsom v. Pryor's Lessee, 7 Wheat 7, 20 U. S. 7, 5 L. Ed. 382. In Hickman v. Tait, supra, it is said that marked lines and corners must be resorted to, to ascertain boundary, although they differ from course and distance. The rule that in determining boundaries, monuments control courses and distances is also well settled. In Pritchard v. Rebori, 135 Tenn. 328, 186 S. W. 121, it is stated that in determining boundaries, resort is first to natural objects or landmarks; second, to artificial monuments; third, to lines of adjacent owners; and last, to courses and distance. It is also stated in this same opinion that this rule has stronger application with respect to boundaries of rough open mountain lands than it does in towns and cities. The unreliability of the calls for courses and distances in the W. J. Morgan title papers is pointed up by the fact that the line south 62 degrees east, 41 poles, would extend approximately 130 feet on beyond the point where the line actually terminates in the T. C. I. line, and take in that much of the T. C. I. tract. Whereas, when this line is run north 72 degrees east to the hole where the proof indicates the oak tree stood, the line is approxi-

mately one pole longer than the 41 poles called for by Morgan's deed. Appellee points this out in his reply brief and inquires "Which is wrong, the angle or the length?" While it is the rule that courses prevail over distances when these must be varied so as to close a survey, appellee's point is well taken.

The north, 72 degrees east, line is also sustained by the preponderance of the evidence that this line was recognized and acquiesced in by W. J. Morgan. It appears Morgan sold his timber on the tract north of the line and the purchaser cut to the north, 72 degrees east, line, and that complainants sold the timber on their side of the line and the purchaser cut to the same line. Prior to that, Herbert Caldwell, complainants' grantor, sold the timber and the purchaser cut to the north, 72 degrees east, line with the knowledge of Morgan and there was no dispute about it.

When complainants returned from Baltimore and learned of the strip mining being carried on by defendant upon land they thought they owned, complainant Blanche Lee Doss, who had at one time been an employee of W. J. Morgan, called on him to discuss the trespass and when, during the conversation, in order to learn Morgan's opinion as to the correct location of his southeast corner, complainants' northeast corner, Mrs. Doss asked Morgan how far it was from his tipple, admittedly located upon his lands, to the corner in controversy, he stated it was something like 100 to 150 feet. This would have placed the corner approximately where it was established by complainants' surveyor. Morgan admitted this on cross-examination but undertook to explain by saying that he did not have a survey on the distance of

the tipple from the line. However, this explanation falls rather flat in view of the fact that the disputed corner, as located by defendant's survey from Morgan's title deed, would be some eight or nine hundred feet from Morgan's tipple. It is difficult for us to see how Morgan could have missed the distance this far, except it be because in truth the corner was located where complainants contend.

Finally, it is important to mention that the south 62 degrees east line contended for by defendant gave no evidence by marks, or blazes or other customary signs that it had ever been established or accepted as the line, an unusual condition if in fact it was the line.

There is no dispute but that approximately 5,000 tons of coal were removed from the lands of complainants and that a reasonable value thereof was thirty-five cents a ton, so that the amount of the decree is unassailable. The decree of the Chancellor not being contrary to the preponderance of the evidence, nor to the law, the same is affirmed.

Hickerson and Shriver, JJ., concur.