# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
May 12, 2003 Session

## WILLIS EDWARDS, ET AL. v. KATHERINE L. HECKMANN, ET AL.

### Appeal from the Chancery Court for Claiborne County
No. 13,270    Billy Joe White, Chancellor

### FILED JUNE 25, 2003

### No. E2002-02292-COA-R3-CV

This appeal involves a boundary line dispute between Willis Edwards and Wendall Edwards ("Plaintiffs") and Katherine and Gregory Heckmann ("Defendants"). Plaintiffs and Defendants presented proof from their respective surveyors regarding the appropriate boundary line for the disputed area of land. The surveyors testified in detail regarding the natural and artificial landmarks, etc., they relied upon in arriving at their differing conclusions. The Trial Court concluded Defendants' surveyor was accurate and entered judgment accordingly. Plaintiffs appeal. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded.

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, J., and CHARLES D. SUSANO, JR., J., joined.

Timothy P. Webb, Jacksboro, Tennessee, for the Appellants Willis Edwards and Wendell Edwards.

Lee Dan Stone, III, Tazewell, Tennessee, for the Appellees Katherine L. Heckmann and Gregory Heckmann.

# OPINION

## Background

Plaintiffs own land in Speedwell, Tennessee. Defendants own an adjoining tract of land. According to the complaint, Plaintiffs learned in February of 2000, that Defendants were about to start cutting timber on an eight acre area of land whose ownership was disputed. Although Plaintiffs requested Defendants not cut timber on the disputed area, Defendants "logged the entire area in dispute." Plaintiffs claimed to have exercised control over the disputed area for the past 78 years, and alleged Defendants trespassed onto their property. Plaintiffs maintained they were the actual owners of the disputed area by deed or, in the alternative, adverse possession.[1] Plaintiffs sought to have title to the land quieted and a restraining order prohibiting Defendants from further trespassing onto their property. Plaintiffs also sought compensation for the value of the timber.

Defendants answered the complaint, generally denying the allegations contained in it. Defendants also filed a counterclaim, seeking a declaration that they were the owners of the property in question. Defendants also sought $10,000 as damages for their inconvenience caused by Plaintiffs' improper actions, as well as costs and attorney fees.[2]

Defendants filed a motion to bifurcate the trial, asking the Court first to determine ownership of the disputed property. Then, depending on the outcome of that particular issue, the parties could litigate the issue of damages if necessary. The Trial Court granted the motion and the sole issue of ownership of the disputed property was tried on July 10, 2002.

Plaintiffs' only witness during their case in chief at trial was Dennis Fultz ("Fultz"). Fultz has been a licensed surveyor for twenty-seven years. Fultz originally was contacted by Defendant Katherine Heckmann about surveying the property. Although Fultz obtained copies of several deeds and information from the Tax Assessor's office, he never undertook to survey the property. Plaintiffs later hired him to survey the property in question. At that time, Fultz was presented with a "preliminary" survey prepared by a Mr. Crutchfield ("Crutchfield"). Fultz provided Plaintiffs with the information he had compiled after his previous conversation with Mrs. Heckmann, and told Plaintiffs to give this information to Crutchfield and have him complete the survey he already had started. After Plaintiffs were unable to get Crutchfield to complete his survey, Fultz agreed to survey the property in question.

---

[1] Plaintiffs do not pursue their adverse possession claim on appeal.

[2] Although not directly pertinent to this appeal, Plaintiffs also sued Coy Watson ("Watson"), who was hired by Defendants to cut the timber. Watson filed a cross-claim against Defendants and a third-party complaint against Mark Comparoni, who prepared the survey upon which Watson relied when logging the disputed area. In a nutshell, Watson maintained he relied upon Comparoni's survey and Defendants' representations that they were the actual owners of the property and, as a result, he was entitled to indemnification in the event Plaintiffs recovered a judgment. Because the Trial Court eventually concluded Defendants were the owners of the disputed property, the complaint against Watson and his claims for indemnification were dismissed.

Fultz testified to the various deeds he relied upon in preparing the survey. Fultz also relied upon Crutchfield's preliminary survey, as well as completed surveys prepared earlier by Mark Comparoni and William Parsons. In arriving at his conclusions as to the appropriate boundary line, Fultz noted that the Crutchfield, Comparoni, and Parsons surveys all contained a particular stone as a reference point. The Crutchfield and Parsons surveys (but not the Comparoni survey) also contained a second stone as a point of reference. Fultz testified to various errors he believed were contained in the initial survey prepared many years ago and various subsequent deed divisions. For example, Fultz testified there was what he assumes to be a "clerical" error in which a division line was changed from "twenty-seven poles" to "forty-seven poles," which he claims improperly added 330 feet in distance to Defendants' property. Fultz opined the proper reference to twenty-seven poles would be consistent with a fence boundary and a stone. Interestingly, Fultz also testified that a portion of the disputed property was not owned by either Plaintiffs or Defendants according to his interpretation of the relevant deeds. More specifically, Fultz claimed this particular area, which comprises approximately 2.83 acres, actually was owned by either the family of Jordan Hopper or Iverson Graves. Fultz acknowledged that there is a fence located on the boundary line which the Comparoni and Crutchfield surveys indicate is the proper boundary between the property of Plaintiffs and Defendants.[3]

Defendants' first witness was Tom Jessee ("Jessee"), a field engineer employed by William Parsons. Jessee assisted with a June 2000 survey on what was referred to at trial as the "Iverson Graves/C.J. Hopper" property. While conducting the survey, Jessee was shown the location of two corners of this property by C.J. Hopper. Jessee identified a fence row which, according to the Parsons survey, divides the property between Plaintiffs and Defendants, with Defendants owning the property to the south of this fence. Jessee stated this information was "represented to [him] at the site" by C.J. Hopper. Based on the location of the two corners C.J. Hopper identified to Jessee, the "Iverson Graves/C.J. Hopper" property does not include the 2.83 acres of land which Fultz claimed one of them owned, and is consistent with the boundary as claimed by Defendants. Jessee admitted neither Plaintiffs nor Defendants personally identified to him their property lines and, therefore, he did not know whether Plaintiffs or Defendants actually owned the land at issue in the lawsuit.

The next witness was Mark Comparoni ("Comparoni"), a licensed surveyor in four states, including Tennessee. Defendants initially contacted Comparoni in 1999 about surveying their property. Defendants indicated they were having trouble with relatives who owned adjoining land, and they might have a boundary overlap and needed their property surveyed. Comparoni identified the survey he prepared for Defendants and the various deeds he relied upon in preparing the survey. According to Comparoni, the deeds which were created when the property was initially divided in 1902 contained many errors and were not very reliable, and so he placed more emphasis on recent deeds. Because certain information on the deeds was not very reliable, Comparoni testified he also relied on "what was on the ground." Specifically, Comparoni stated in his opinion, the surveyors who divided the original estate in 1902 were not competent. Comparoni then added:

_____

[3] It is this fence which Defendants also claim to be the proper boundary line.

But, every surveyor, including Mr. Fultz, Mr. Parsons, and myself, when we go to the field, we leave evidence in the field of where we've been. We cut out lines. We flag lines. We stake lines, whether we're capable of bringing that information back into the office and accurately plotting it…. But, we do always leave evidence in the field of where we've been. And, in my opinion, the surveyor that divided the … [original] estate in 1902 left quite a bit of evidence of where he had been.

Comparoni asserted Defendants' property was enclosed by a fence on the northeast side, as was the property of several adjoining landowners. Comparoni then discussed the various natural landmarks, artificial landmarks, and other indicia he used to identify the various stations which set forth the boundaries of Defendants' property, such as trees, fences, stones, etc. Comparoni concluded Defendants' property line ran along a fence line going northeast from a red oak tree which was located at an intersection between two fences. Comparoni testified he disagreed with Fultz' conclusions regarding the location of the property line, stating the forty-seven pole call is correct, and the twenty-seven pole call "is based on a very erroneous estate division."

The next witness was Larry Edwards, Defendant Katherine Heckmann's father. Larry Edwards obtained this land from his parents, and was familiar with the boundaries of the land obtained from his parents and later deeded to his daughter. Larry Edwards testified the boundary was the fence line identified in Comparoni's survey. Larry Edwards claimed that he never had any dispute with Plaintiffs over what was the proper boundary line when he owned the property. Larry Edwards claimed Plaintiffs never made any use of this property. Larry Edwards further testified that in 1976, he cut down as many as 30 trees to build a house. Some of these trees were located on the now disputed area, and Plaintiffs never objected. At the time of trial, Larry Edwards was sixty-two years old, and stated the fence which divided the property had "been there as far back as I can remember."

The Trial Court issued a memorandum opinion from the bench. The Trial Court stated both surveyors were "real good." Nevertheless, the Trial Court stated, correctly, that its duty was to weigh all of the proof and facts, and not look at any one single item. According to the Trial Court, it believed an important item of proof was the Parsons survey because the Parsons survey did not support Fultz' claim that 2.83 acres of the disputed property belonged neither to Plaintiffs nor Defendants but instead to Iverson Graves or the family of Jordan Hopper. After discussing the testimony of Comparoni and Fultz, the Trial Court concluded the preponderance of the evidence was that Defendants' surveyor, Comparoni, was correct. On August 15, 2002, the Trial Court entered a Judgment incorporating its July 10 memorandum opinion, declaring the boundary of the disputed property to be in accordance with the Comparoni survey, and dismissing Plaintiffs' complaint.

Plaintiffs appeal, claiming the Trial Court erred by not following the framework set forth in *Thornburg v. Chase*, 606 S.W.2d 672 (Tenn. Ct. App. 1980), and in relying on the Parsons survey when Parsons never testified at trial. Defendants claim Plaintiffs' appeal is frivolous.

-4-

**Discussion**

Our review of findings of fact by a trial court is *de novo* upon the record of the trial court, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Brooks v. Brooks,* 992 S.W.2d 403, 404 (Tenn. 1999). Review of questions of law is *de novo,* without a presumption of correctness. *See Nelson v. Wal-Mart Stores, Inc.,* 8 S.W.3d 625, 628 (Tenn. 1999).

We first address Plaintiffs' argument that the Trial Court erred by not following the framework established in *Thornburg v. Chase*, 606 S.W.2d 672 (Tenn. Ct. App. 1980). In *Thornburg*, we stated as follows:

> In determining disputed boundaries, resort is to be had first to natural objects or landmarks, because of their very permanent character; next, to artificial monuments or marks, then to the boundary lines of adjacent landowners, and then to courses and distances. *Pritchard v. Rebori*, 135 Tenn. 328, 186 S.W. 121 (1916); *Minor v. Belk*, 50 Tenn. App. 213, 360 S.W.2d 477 (1962); *Doss v. Tenn. Prod. & Chem. Corp.*, 47 Tenn. App. 577, 340 S.W.2d 923 (1960). This rule of construction is to aid in determining the intention of the parties to a deed which is to be determined, if possible, from the instrument in connection with the surrounding circumstances. *Dearing v. Brush Creek Coal Co.*, 182 Tenn. 302, 186 S.W.2d 329 (1945); *Cates v. Reynolds*, 143 Tenn. 667, 228 S.W. 695 (1920).

*Thornburg*, 606 S.W.2d at 675.

Plaintiffs argue the Trial Court erred in not making reference to the various factors set forth in *Thornburg* when it determined the location of the boundary line. We disagree. The proof at trial was, for the most part, a battle of the experts. Plaintiffs and Defendants presented proof from their respective surveyors explaining where they believed the boundary line to be and exactly how they arrived at that conclusion. Fultz and Comparoni even went so far as to explain why they believed each other's conclusion was inaccurate. Fultz and Comparoni detailed the natural landmarks they believed established boundaries of the disputed property and adjoining land. When natural landmarks were not present, artificial landmarks (such as the fence) were discussed. The Parsons survey and testimony of Jessee pertaining to the boundary line of an adjacent landowner also were introduced at trial. When the Trial Court concluded the survey by Comparoni was accurate, the Trial Court implicitly adopted the conclusions made by Comparoni which encompassed the relevant factors set forth in *Thornburg*.

In resolving a boundary line dispute, the trier of fact must evaluate all of the evidence and assess the credibility of the witnesses. *Mix v. Miller*, 27 S.W.3d 508, 514 (Tenn. Ct. App. 1999).

A trial court's findings regarding the credibility of witnesses is binding on this Court unless they are contrary to the preponderance of the evidence. *Id*. In the present case, the Trial Court was confronted with conflicting testimony by Fultz and Comparoni. The Trial Court found both witnesses competent in their profession and thorough in their testimony. This made the ultimate decision all the more difficult for the Trial Court. We also note that our review of the trial transcript disclosed numerous times when witnesses in answering a question would point to something on the survey. Often there is nothing in the transcript or on the exhibit to show us in our review of the record exactly what the witness pointed to on the survey. The Trial Court, of course, had the benefit of seeing the witness indicate exactly what it was he was pointing to, while this Court does not.

Based on our review of the complete record in this case, we cannot conclude that the preponderance of the evidence is against the Trial Court's finding that the Comparoni survey was the accurate one. *See Mix v. Miller*, 27 S.W.3d 508, 514 (Tenn. Ct. App. 1999)("Based on our review of the record in the instant case, we cannot say that the evidence preponderates against the trial court's conclusion that the Mix deed and Mr. Barrett's survey are preferable to the Miller deed and Mr. Coleman's survey."); *Slack v. Antwine*, No. W2000-00961-COA-R3-CV, 2001 Tenn. App. LEXIS 24, at * 19 (Tenn. Ct. App. Jan. 11, 2001), *no appl. perm. appeal filed,* ("Two surveyors testified in this case and the chancellor had the benefit of observing the surveyors as they testified with regard to their activity in locating boundary lines.… Considering the testimony of both surveyors with deference to the determination of credibility by the chancellor, we cannot say that the evidence preponderates against the finding of the trial court.").

Plaintiffs' second issue is their claim that the Trial Court erred in relying on the Parsons survey when Parsons never testified at trial. The Parsons survey was discussed at trial first by Fultz, who was Plaintiffs' witness. Fultz expressly stated he found the Parsons survey useful and that he utilized this survey, among others, in arriving at his conclusions. During Jessee's testimony, Plaintiffs never objected to any discussions about the Parsons survey. In fact, Plaintiffs never objected at any point during the trial to the introduction of this survey, presumably because it was their witness who first discussed this survey and his reliance on same. In light of the foregoing, Plaintiffs cannot now complain that the Trial Court erred in relying on the Parsons survey. *See* Tenn. R. App. P. 36 (a)("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). We, therefore, need not decide whether any error actually was committed by the Trial Court when it relied, at least in part, on the Parsons survey.

The final issue is Defendants' claim that Plaintiffs' appeal is frivolous. We decline to hold that the appeal is frivolous.

## **Conclusion**

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for further proceedings as necessary, if any, consistent with this Opinion, and for collection of the costs below. Costs on appeal are assessed against the Appellants Willis Edwards and Wendell Edwards, and their surety.

 

 

_____

D. MICHAEL SWINEY, JUDGE