IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 22, 2025 Session

## ROBERT W. SMITH ET AL. v. MAXIE JONES, D/B/A TENNESSEE RIVER INVESTORS

**Appeal from the Chancery Court for Hardin County**
**No. CH-766  Vicki Hodge Hoover, Chancellor**

———————————————————

**No. W2024-00810-COA-R3-CV**

———————————————————

This appeal stems from a boundary line dispute. Mr. Jones sold the Smiths two lots within a subdivision in Hardin County. It is undisputed that the Smiths bought Lots 87 and 88 on September 11, 2012. Several years later, Mr. Jones claimed that the Smiths had encroached on "Lot 89."  The Smiths insisted they occupied only the 80 linear feet purchased from Mr. Jones. When the parties were unable to come to a resolution, the Smiths filed suit in chancery court to quiet title to Lots 87 and 88, declare the lot numbers on the survey misnumbered, and prayed for damages for slander of title and attorney's fees.  Mr. Jones filed a counter-complaint to quiet title to "Lot 89," for ejectment, conversion and/or civil theft, civil conspiracy, breach of contract, defamation, and punitive damages. After a bench trial, the trial court held that "Lot 89" did not exist, granted damages to the Smiths for slander of title, and dismissed Mr. Jones's counter-complaint.  We affirm the trial court's holding that "Lot 89" does not exist and the dismissal of Mr. Jones's counter-complaint. We vacate the court's decision as to slander of title, reverse the grant of attorney's fees as to damages, and remand to the trial court for proceedings consistent with this Opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part; Vacated in Part; Reversed in Part; and Remanded**

VALERIE L. SMITH, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG J., joined.

Nicholas Surratt and Benajmin Harmon, Savannah, Tennessee, for the appellant, Maxie Jones, D/B/A Tennessee River Investors.

Terry Abernathy, Selmer, Tennessee, for the appellees, Robert W. Smith, and Patricia Smith.

# MEMORANDUM OPINION[1]

## I.   Factual and Procedural History

Appellees, Robert Smith and wife, Patricia Smith, purchased two lots facing the Tennessee River from Appellant, Maxie Jones, d/b/a Tennessee River Investors, by warranty deed dated September 11, 2012.  The lots purchased are described as "Lot No. 87 and 88" in the Bridgeview Estates Subdivision, Phase IX on the plat filed with the Hardin County Assessor's Office ("the Property"). There is no dispute that the Smiths purchased two lots comprising 80 linear feet.  The Property is joined on the north by Lot 86 (owned by Kacy and Angela Pettigrew) and by Lots 90 and 91 (owned at the time of trial by Larry and Tammy Powers) on the south.

After purchasing the Property in 2012, the Smiths made significant improvements to the Property over the course of several years to ready the Property for development. They spent "something in the neighborhood of $100,000.00 just improving their property to prepare it for the construction of their home," including building a sea wall with the Powers and Pettigrews along their collective properties facing the river.

 Sometime in late 2016 or mid-2017, the construction of the Smiths' home was completed.  After the structure had been built, Mr. Jones informed the Smiths that their building was encroaching on land that he believed he still owned – purportedly on "Lot 89."  Mr. Jones asserted that "Lot 89" is also between Lots 86 and 90, which would make for three lots between the properties of Pettigrew and Powers. Put another way, Mr. Jones takes the position that 120 feet exist between lots 86 and 90.  He argues that the Smiths have encroached on his property since he still owns "Lot 89."

For their part, the Smiths argue that only 80 linear feet exists between the Pettigrew and Powers properties, and that the lot numbering system is in error. Each lot in the subdivision is 40 feet wide. The Smiths have only ever claimed to own 80 feet of property (Lots 87 and 88), and Mr. Jones does not dispute that the Smiths own 80 feet of property. Mr. Jones contends that more than 80 feet exists between Pettigrew and Powers. The Smiths allege that Mr. Jones mislabeled the lots on the plat he recorded with the tax assessor, and that there is no additional property that could comprise a "Lot 89." In 2023, Mr. Jones sent a letter to the property assessor's office officially memorializing his assertion the Smiths had encroached onto "Lot 89."

---

[1] Rule 10 of the Rules of the Court of Appeals provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

On May 1, 2023, the Smiths filed a complaint in the Chancery Court of Hardin County against Mr. Jones requesting that any clouds or encumbrances or deficiencies to the Property be removed by Mr. Jones, and that the court quiet title to their Property. The Smiths also alleged that Mr. Jones libeled and slandered the title to their Property, and that they were therefore entitled to attorney's fees as damages. Mr. Jones filed an answer and counter-complaint seeking declaratory relief and damages for encroachment, ejectment, and conversion, and requesting the court to quiet title to the subject property.

A bench trial on this matter took place on March 5, 2024. The totality of the evidence presented was the testimony of Mr. Smith, Mr. Jones, and 24 exhibits. Both Mr. Jones and Mr. Smith have experience in property development. Mr. Smith went into the land development and timber business around 1972 or 73. He testified that he had done business with Mr. Jones since 1973. Mr. Smith testified that he purchased two lots that measured 40 linear feet each and were known to him as lots 87 and 88. Mr. Smith further testified that he "bought 80 feet of dirt and it's between Mr. Pettigrew and Mr. Powers." Mr. Smith did not participate in numbering the lots, but he testified that the distance between the Pettigrews' and the Powers' properties is only 80 feet and that he had measured it many times. Mr. Smith insisted that no additional land existed that could comprise "Lot 89."

Mr. Jones testified that he does not dispute that the Smiths bought 80 feet of property but asserts that "part of [Mr. Smith's] house is on 'Lot 89.'" Mr. Jones does not dispute that he warranted the sale of two lots to the Smiths. He further testified that he has not been to the lots to view or measure the property. He contends that there is more than 80 feet between the Pettigrew and Powers lots and that excess is "Lot 89." Mr. Jones testified that the Smiths are "taking up" 40 feet of property that he owns. In support thereof, he submitted a number of exhibits to the trial court including an aerial view of what he says is "Lot 89" and the "tax cards" for "Lot 89."

On March 1, 2024,[2] the Smiths filed a Motion Requesting Chancellor to View Premises. No response was filed to the motion. At the conclusion of the proof offered in the trial on March 5, 2024, counsel for the Smiths asked to "simply address" the motion. The court stated in relevant part "I think it would be a good idea for me to go take a look at the property." The court indicated it would schedule a time to view the Property, and each side would need a witness to the viewing. The court referenced the viewing in her April 8, 2024 letter ruling, which was incorporated in a Final Decree and Judgment filed

---

[2] The Chancellor's April 8, 2024 letter ruling refers to this motion having been filed on February 28, 2024. The certificate of service date is February 28, 2024. The Hardin County Chancery Court file stamp reflects this motion as filed on March 1, 2024, at 9:44 A.M.

May 3, 2024.[3]  On March 22, 2024,[4] the chancellor, the bailiff, the court clerk and master, and counsel for both parties visited the property at issue. The only mention of that visit in the record before us is what is set forth in the court's ruling and order. While at the Property, the chancellor physically measured the distance between the Pettigrew's property and the Powers' property to determine whether "Lot 89" did physically exist or if there was an error in numbering on the plat – i.e., whether there was 80 or 120 feet between the two properties.

The court took the matter under advisement. On April 8, 2024, the court ruled by letter holding that "Lot 89" does not exist, the numbering system used by Mr. Jones was incorrect, that Mr. Jones is responsible for filing an amended plat to clear the title to the property of the Smiths, and that reasonable attorney fees and expenses incurred by the Smiths along with court costs in defending the title to their Property be awarded "as damages for libel/ slander." The court noted that no expert witness testimony was presented at trial, but the testimony of an expert surveyor would have been helpful. Other than the testimony of Mr. Smith and Mr. Jones, the only evidence at trial came from the 24 exhibits entered into the record and the chancellor's own viewing of the property. The court found the Smiths' property to be 80 feet wide, as they claimed, and concluded there was no "Lot 89" between their land and that of Pettigrew and Powers. Consequently, the Smiths' building did not encroach on Jones's property. The court dismissed Jones's counter-complaint and awarded the Smiths damages for libel/slander arising from defending their title.

## II.    Issues Presented

Appellant raises the following issues, which we have slightly restated:

    A.  Whether the trial court erred in holding that Lot 89 does not exist.

    B.  Whether the trial court erred in granting Appellees' claim for slander/ libel of title and awarding attorney's fees as damages.

    C.  Whether the trial court erred in dismissing Appellant's Counter-Complaint.

---

[3] The Final Decree and Judgment are dated April 30, 2024. The Hardin County Chancery Court file stamp reflects the file stamp date as May 3, 2024, at 9:45 A.M.

[4] The Chancellor's April 8, 2024 letter ruling refers to a scheduled viewing of the property on March 14, 2024, and then "[b]ecause of the weather, the site visit was accomplished at a later date, specifically March 22, 2024."

### III. Law and Analysis

On appeal, we review a non-jury case *de novo* upon the record with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). We presume that the findings of fact are correct unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006). "[O]ur review of the court's legal conclusions is *de novo* with no presumption of correctness." *Harris for Richey v. Richey*, No. M2021-00331-COA-R3-CV, 2021 WL 6054819, at *4 (Tenn. Ct. App. Dec. 21, 2021) (citing *In re Estate of Fletcher*, 538 S.W.3d 444, 448 (Tenn. 2017)).

A trier of fact must resolve a boundary line dispute by evaluating all the evidence and the witness's credibility. *Mix v. Miller*, 27 S.W.3d 508, 514 (Tenn. Ct. App. 1999). The question of where a boundary lies is a question of fact and so the trial court's findings are reviewed *de novo*. *Thornburg v. Chase*, 606 S.W.2d 672, 675 (Tenn. Ct. App. 1980). The burden is therefore on Mr. Jones to show that the evidence preponderates against the trial court's findings.

When it comes to live, in-court witnesses, appellate courts should afford trial courts considerable deference when reviewing issues that hinge on the witnesses' credibility because trial courts are "uniquely positioned to observe the demeanor and conduct of witnesses." *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000). "[A]ppellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999); *see also Hughes v. Metro. Gov't of Nashville & Davidson Cnty.*, 340 S.W.3d 352, 360 (Tenn. 2011). In order for evidence to be clear and convincing, it must eliminate any "serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *State v. Sexton*, 368 S.W.3d 371, 404 (Tenn. 2012) (quoting *Grindstaff v. State*, 297 S.W.3d 208, 221 (Tenn. 2009)). Whether the evidence is clear and convincing is a question of law that appellate courts review de novo without a presumption of correctness. *Reid ex rel. Martiniano v. State*, 396 S.W.3d 478, 515 (Tenn.), *cert. denied*, 571 U.S. 894 (2013) (citing *In re Bernard T*, 319 S.W.3d 586, 596-97 (Tenn. 2010)); *Kelly v. Kelly*, 445 S.W.3d 685, 692-93 (Tenn. 2014).

#### A. The Existence of "Lot 89"

Here, the trial court made specific findings as to the ownership of the Property in its April 8, 2024 letter, which was subsequently memorialized in an order on May 3, 2024. In relevant part, the court found:

1. On March 22, 2024, the Court, the bailiff, and the Clerk & Master went to the site of the Plaintiff's [sic] property, accompanied by counsel, and measured using a surveyors' tape, the distance of Plaintiff's two lots. The parties, as well as a surveyor, were also present at the site but did not accompany the Court, bailiff, and Clerk & Master to the actual location on site to measure the lines of Plaintiff's property. The measurement was, as stated by Plaintiffs, 80 feet in width. Plaintiff's contention that there was no "Lot 89" between their land and the lands of Pettigrew and Powers is correct, and there is no room for any other marked lot. The Court determined that the numbering system used by Mr. Jones was incorrect as to the purported lot numbers and location shown on the plat and that Plaintiff's building does not encroach upon any other lot outside of his purchased lots and lies entirely on the lots designated to him by deed from the Defendant.

2. The Court finds through the testimony of the parties, the exhibits entered, the personal viewing and measuring of the property on question[5], that the Plaintiffs. [sic] Robert Smith, and wife, Patricia Smith, have provided credible testimony and exhibits, and have met their burden of proof. The Court finds that Plaintiffs are the owners of Lots 87 and 88 of said subdivision, as noted in their deed, and that no Lot 89 is in existence between Plaintiffs' property and the property of Pettigrew and the property on either side of the Plaintiff's property.

The central issue presented to us for review is whether the trial court erred in finding that "Lot 89" did not exist. The burden is on Mr. Jones to show that the evidence preponderates against that finding. Mr. Jones relies on surveys that were admitted into evidence and very simply argues that the survey "governs." In support of this argument on appeal, Mr. Jones makes several conclusory assertions that a proffered survey must be read and interpreted in his favor without pointing this Court to any law or authority on the issue. Mr. Jones argues that well established Tennessee law requires a court to "look at the survey." He asserts that *Thornburg v. Chase*, 606 S.W.2d 672 (1980), "requires" the court to defer to a survey. In *Thornburg*, a surveyor offered testimony. *Id.* at 676. Mr. Jones argues that *Jackson v. Bownas*, No. E2004-01893-COA-R3-CV, 2005 WL 1457752 (Tenn. Ct. App. June 21, 2005), supports his position as well. In *Jackson*, again, testimony of a surveyor was presented. *Id.* at *4. The record before us contains no interpretive testimony

---

[5] At oral argument, counsel for Mr. Jones argued that this action by the trial judge amounts to an abuse of discretion. Counsel then acknowledged that the measurements taken by the court were not objected to at the trial level and not raised as an issue in their brief.

about surveys other than to establish their existence.[6]  Indeed, the trial court stated in its letter ruling "[a]n expert surveyor would have been helpful in this matter."  In the record before us, there is little testimony to aid the court in its review of the proffered surveys. Though Mr. Jones relies on the proffered surveys, he has provided no authority that it is the role of the court to defer to a survey put forth with no testimony of a surveyor to aid the court.

In contrast, the Smiths assert that the issue in this case can be and has been resolved by simply looking at the Property.  They argue that there is only 80 feet at issue rather than the 120 feet argued by Mr. Jones.  At oral argument, counsel for Mr. Jones conceded that an "issue could have been three, four, five lots down the line," but that Mr. Jones has no standing to dispute ownership elsewhere. In its order, the trial court stated that it made its decision based upon its own measurement and viewing of the Property[7] and the testimony and credibility determinations of the parties. Again, these determinations by a trial court are entitled to deference on appeal. Tenn. R. App. P. 13(d); *Rawlings v. John Hancock Mut. Life Ins. Co.,* 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). As set forth above, the trial court made detailed findings regarding the parties' credibility and the measurement of the Property. Mr. Jones has failed to meet his burden of proving that the evidence in the record preponderates against the trial court's decision. Mr. Jones is, therefore, not entitled to relief on this issue.

### B.     Slander of Title and Award of Attorney Fees

After concluding that "Lot 89" did not exist the trial court awarded damages to the Smiths for slander of title.  In addressing the claim for slander of title the trial court's order states:

---

[6] Though not clear from the record, the exhibits in this case appear to have been entered by stipulation of the parties.

[7] We express no opinion as to the propriety of the trial court's action in taking its own measurements.  As discussed *supra*, this was not raised as an issue for this Court's review.  Tenn. R. App. P. 13(b) ("Consideration of Issues Not Presented for Review"). Rule 13(b) of the Tennessee Rules of Appellate Procedure provides that:

> Review generally will extend only to those issues presented for review. The appellate court shall also consider whether the trial and appellate court have jurisdiction over the subject matter, whether or not presented for review, and may in its discretion consider other issues in order, among other reasons: (1) to prevent needless litigation, (2) to prevent injury to the interests of the public, and (3) to prevent prejudice to the judicial process.

4. The Court awards as damages the reasonable attorney fees incurred by Plaintiffs, as well as any produced expenses involved in defending their title to the subject property lots in Bridgeview Estates Subdivision, and assesses all such costs, including court costs, to the Defendant included as damages for libel/slander.

Slander or libel of title was first recognized as a cause of action in *Smith v. Gernt,* 2 Tenn. Civ. App. 65, 79-80 (1911); *see Harmon v. Shell,* No. 01-A-01-9211-CH-00451, 1994 WL 148663, at *4 (Tenn. App. M.S. Apr. 27, 1994). To establish a successful claim for slander of title, a plaintiff must prove: (1) that it has an interest in the property, (2) that the defendant published false statements about the title to the property, (3) that the defendant was acting maliciously, and (4) that the false statements proximately caused the plaintiff a pecuniary loss. *Id.* (citations omitted). Statements made with reckless disregard of the property owner's rights or with reckless disregard as to whether the statements are false may be malicious within the scope of a libel of title action. *Id.* (citing *Gernt,* 2 Tenn. Civ. App. at 79-80). To assert this cause of action, the plaintiff must allege "malice . . . in express terms or [by] any such showing of facts as would give rise to a reasonable inference that [the defendant acted maliciously.]" *Waterhouse v. McPheeters,* 176 Tenn. 666, 669, 145 S.W.2d 766, 767 (1940). A good faith, but erroneous, claim of title does not constitute a cause of action for libel of title. *Ezell v. Graves,* 807 S.W.2d 700, 704 (Tenn. App. 1990).

The Smith's complaint asserted that Mr. Jones was liable for slander of title due to his "filing in the Property Assessor's Office of Hardin County, Tennessee, a misleading and inaccurate plat." Mr. Smith testified that their damages to rectify this problem amounted to the attorney's fees they had incurred. On appeal, Mr. Jones argues that the trial court erred in finding the Smiths' title had been slandered because the court made no finding of malicious intent.

The trial court did make numerous findings relevant to the ownership of the property as well as to credibility. The order of the trial court does not, however, include findings sufficient for our meaningful review of its award of damages for slander of title pursuant to Tennessee Rule of Civil Procedure 52.01. *See Cain-Swope v. Swope*, 523 S.W.3d 79, 86 (Tenn. Ct. App. 2016) ("[F]indings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue.") (quoting *Lovlace v. Copley*, 418 S.W.3d 1, 35 (Tenn. 2013)). We agree with Mr. Jones's position that the trial court failed to include a finding that Mr. Jones acted maliciously. Absent such a finding, we vacate the trial court's order in that respect. Because we vacate the slander of title decision of the trial court, attorney's fees awarded are reversed. The matter is remanded to the trial court for determination of slander of title in line with this opinion and damages if any.

### C. Jones's Counter Complaint

In his brief on appeal, Mr. Jones presents only a scant argument as to why the trial court erred in dismissing his counter-complaint. As we read it, his argument seems to be that if this Court agrees with his position as to the trial court's ruling, that his counter-complaint should be "revived." We have affirmed the trial court's decision regarding the non-existence of "Lot 89" in our discussion above. Based upon our review and affirmation of the trial court's decision as to "Lot 89," we conclude that the trial court did not err in dismissing Mr. Jones's counter-complaint to quiet title to "Lot 89," for ejectment, conversion and/or civil theft, civil conspiracy, breach of contract, defamation, and punitive damages.

## IV.    Conclusion

In light of the foregoing, we affirm the trial court's determination that "Lot 89" does not exist, and that the Smiths therefore did not encroach upon it. We vacate the trial court's decision as to slander of title and reverse the award of attorney's fees as damages. We remand for further findings of fact as to slander of title and determination of damages, if any. We also affirm the trial court's dismissal of Mr. Jones's counter-complaint. Costs on appeal are assessed to the appellant, Maxie Jones, d/b/a Tennessee River Investors, for which execution may issue.

s/Valerie L. Smith
VALERIE L. SMITH, JUDGE